JULIUS C. JENSEN vs. HARRY H. CANNELL.

Cumberland.    Opinion March 10, 1910.

*Officers.  Sheriffs and Constables.  Attachment.  Exemptions.  Waiver. Revised Statutes, chapter 83, section 64, paragraph VI.*

Generally an officer is not liable for attaching too much or too little property, if he exercises a sound discretion and acts in good faith.

Where in an action against a deputy sheriff for making an excessive attachment on a writ and it appeared that the ad damnum in the writ was $50.00 and the officer attached goods claimed to be worth $73.25, but before, making the attachment the officer was informed by a well known and reliable merchant that the value of the goods was much less than $73.25, *held* that the attachment was not excessive.

A debtor's right to claim attached property as exempt under Revised Statutes, chapter 83, section 64, paragraph VI, *held* to have been waived by the debtor's attorney telling the officer " to go ahead."

Where it was contended that an officer was oppressive in refusing to attach goods other than those attached or to take a bond, *held* that there was no adequate evidence to support the contention.

On exceptions by plaintiff.    Overruled.

Action of trespass brought in the Superior Court, Cumberland County, against the defendant, a deputy sheriff, alleging the illegal attachment by him of certain personal property.   The writ contained two counts, one for goods taken and carried away, and the other in trover.   Plea, the general issue, with brief statement as follows: "That he, on the eighteenth day of June, A. D. 1909, and for a long time prior thereto, was, and still is a duly appointed and qualified officer in and for said County of Cumberland and State of Maine, duly authorized and qualified to serve precepts, writs, etc., in said County of Cumberland, and that at the time of the alleged trespass complained of he was then and there qualified and authorized as above set forth, he being then and there a deputy sheriff, of said County of Cumberland.   That on said day he then and there, by virtue of a writ issued from the Municipal Court of the City of Portland, in said County of Cumberland, attached

certain personal property of the plaintiff, and then and there made proper return on said writ, which writ was then and there properly returned to the court. That he was then and there commanded by said writ to attach the goods and estates of the said Julius C. Jensen to the value of .fifty (50) dollars, and that he then and there, by virtue of said writ, and in answer to the command then and there contained in said writ, attached the goods and estate of the defendant to the value, in his judgment, of fifty (50) dollars, and attached, removed or exercised dominion over no other goods. That he was then and there acting in his capacity as an officer, to wit, a duly qualified deputy sheriff, and he then and there had in his possession, duly issued from said Municipal Court, a writ directing him to attach the goods and effects of said defendant to the value of fifty (50) dollars, and that he did then and there by virtue of said writ attach the goods and effects of the defendant to the value, in his best estimation and opinion, of fifty (50) dollars, and attached no other goods. That said return was then and there properly made, and said writ by him returned to court at the return day thereof, to wit, the sixth day of July, 1909 the court then and there being said Municipal Court."

At the conclusion of the evidence, the presiding Justice, on motion of the defendant, ordered a verdict for the defendant and the plaintiff excepted.

The case is stated in the opinion.

*Dennis A. Meaher*, for plaintiff.

*Connellan & Connellan*, for defendant.

SITTING: EMERY, C. J., PEABODY, SPEAR, CORNISH, KING, BIRD, JJ.

SPEAR, J. This is an action of trespass against an officer alleging the illegal attachment by him of personal property. The facts are these: The plaintiff was a baker. The 19th day of June, 1909, was Saturday. Upon this day in the afternoon he had in stock in his place of business six and one-half barrels of flour, which

he alleges were procured by him and necessary for carrying on his trade or business as a baker. Between four and five o'clock in the afternoon, the defendant, a deputy sheriff, upon a writ properly issued, with order to attach, entered the plaintiff's place of business for the purpose of making an attachment of personal property. Omitting the evidence of immaterial matters, which transpired while the officer was in the plaintiff's shop, we may proceed upon the theory assumed by the plaintiff in the present action that he, at the time of the attachment, was the owner of the flour attached. The ad damnum in the writ upon which the defendant was directed to attach was fifty dollars; the value of the flour attached is alleged by the plaintiff to have been seventy-three dollars and twenty-five cents. There is also testimony tending to show that the plaintiff, while the officer was in the shop, requested him to attach goods other than the flour, and offered him a bond as security in place of the attachment. Upon this state of facts the plaintiff claims that the attachment of the flour made by the defendant was illegal in three respects: 1. Because the officer was oppressive in refusing to attach other goods or take a bond. 2. Because the attachment was excessive. 3. Because the property was exempt under the provisions of R. S., chap. 83, sec. 64, Art. 6.

With respect to the first contention it may be dismissed with the observation that there is no adequate evidence upon which to sustain it. In regard to the second it appears that the ad damnum in the writ was fifty dollars and the amount attached seventy-three, upon the plaintiff's own estimate of value. Upon the evidence the value placed upon the flour by the plaintiff might be subject to material modification. The defendant telephoned a well known and reliable merchant and was informed that the flour was worth much less than $73.25. Upon the fair value of the evidence the attachment was not excessive. It is said in *Strout* v. *Pennell*, 74 Maine, 260: "Generally an officer is not liable for attaching too much or too little property, if he exercises a sound discretion and acts in good faith. Shear. & Red. Neg. Paragraph 523 and cases."

The third proposition involving the question of exemption would present a more difficult problem were it not for the fact that the

right of exemption was not only not claimed, but expressly waived. It appears from the testimony that the defendant was in the plaintiff's place of business discussing the question of attachment for nearly an hour. While the flour had been taken into custody by the officer, it had not been carried away so it could not have been immediately restored upon demand. During this time the plaintiff communicated over the telephone with his attorney, and, in view of the interview whatever it may have been, put the officer also in communication with him. Upon the happening of this event, the inference should be inevitable that the plaintiff was then represented by an attorney in fact and that, whatever his attorney said or did with respect to the execution of the attachment, should be binding upon him. While the plaintiff does not directly admit that he talked with Mr. Meaher, and put him in communication with the defendant, yet the evidence upon this point is overwhelming, and the plaintiff was obliged to answer when asked if he heard the officer talking with Mr. Meaher, "Yes, sir, I heard him talking with him." Now it should be observed that Mr. Meaher was also the plaintiff's counsel in the trial of this case. The following, relating to Mr. Meaher's instructions, is found in his cross-examination of the defendant. Q. Do you remember telephoning to me that Mr. Connellan would not take Enemark as surety? A. I do not remember making that statement in that manner, no, sir. Q. And that he could not get any surety that Connellan would accept? A. I do not remember making any such statement at all to you. Q. Do you remember my telephoning back to you that if he could not get a bond, to make an attachment but not to attach too much? A. Not in those words. Q. What were the words? A. After I had stated the case to you you told me to go ahead but do not take too much. I asked you if you were coming down there and you said no. Q. You told me your instructions were to do so and so, did you not? A. My instructions were to attach under the writ, yes, sir. Q. You told me, did you not, that you could not help attaching and I told you to go ahead? A. Yes, sir. Q. But not to take too much? This same testimony is practically repeated on the cross-examination of another witness.

From this evidence, undisputed and conceded by Mr. Meaher in his cross examination to be true, it is evident that exemption was expressly waived by the plaintiff's attorney in fact, who instructed the officer "to go ahead" but not to take too much.

Upon the question of waiver it is said in *Clapp* v. *Thomas*, 5 Allen, 158, "It is not reasonable that a debtor, for whose benefit an exemption of his necessary family provisions from seizure is made should by his silence or obstinacy, subject an officer to the payment of damages for doing what it is to be presumed he would not have done but for the debtor's fault. A debtor may always waive his privilege and consent that his exempted property may be applied to the payment of his debts; and it is not necessary that such waiver should be expressed in words. It may be made by acts or by neglect to act." The last part of the above quotation is adopted with approval in *Smith* v. *Chadwick*, 51 Maine, 515. We can hardly conceive of a case to which the doctrine of waiver could more fitly apply. While the officer and the plaintiff are presumed to know the law with respect to exemption, it yet may be true that neither of them had any actual knowledge whatever of such a law. But when the defendant was put in communication with the plaintiff's attorney, it is to be assumed that he had actual knowledge of the exemption provided by statute, and that his instructions were entitled to be regarded by the officer as coming from authority upon which the officer had a right to rely and act. There is every presumption that the officer, if he had been informed that the flour to the amount of $50 was exempt, and that exemption to that amount was demanded, would have refrained from attaching as he did. It would appear, therefore, that the officer from the instructions given him by the attorney felt authorized, if he was not induced, to attach all the flour that was necessary to satisfy the demands of his writ, and warned only against an excessive attachment.

*Exceptions overruled.*