In re James R. ROBERTS, J. Muriel Roberts, Debtors.

AUBURN FEDERAL CREDIT UNION, Plaintiff,

v.

James R. ROBERTS, J. Muriel Roberts, Gerald S. Cope, Trustee, Defendants.

Bankruptcy No. 281–00380.
Adv. No. 282–0003.

United States Bankruptcy Court,
D. Maine.

July 20, 1982.

Ronald P. Lebel, Rocheleau, Fournier & Lebel, P. A., Lewiston, Maine, for plaintiff.

John Whalen, Platz & Thompson, P. A., Lewiston, Maine, for debtors.

Gerald S. Cope, Cope, Cope & Carlisle, Portland, Maine, for trustee.

MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

Plaintiff seeks in its amended complaint to determine its rights in debtor James Roberts' 1975 Chrysler Cordoba automobile. The parties have stipulated to the facts and submitted briefs.

The plaintiff has a duly perfected non-purchase-money security interest dated October 20, 1980 in certain personal property including the Cordoba. On that date, the car was worth over $1,000. The debtors filed their Chapter 13 petition on August 10, 1981, at which time the value of the car was $785, and the amount of the secured debt owed to the plaintiff was $5,604.11. Debtor, James Roberts, the car's owner,

elected to take the federal exemptions, and has claimed an exemption in the car pursuant to 11 U.S.C. § 522(d)(2).[1] The car has been used by the debtors at all relevant times for personal and family use.

■ It is clear that the plaintiff's security interest cannot be avoided pursuant to 11 U.S.C. § 522(f). That section permits avoidance of nonpossessory, nonpurchase-money security interests in household goods, tools of the trade and certain health aids. While an automobile in some circumstances may qualify as a tool of the trade, *see In re Langley*, 21 B.R. 772, 773 (Bkrtcy. D.Me.1982), here the parties have stipulated that the Cordoba was held for personal and family use.

The state exemption statute in effect both at the time of creation of the security interest and at the time of filing provided in part:

> The following personal property is exempt from attachment and execution and such right of exemption may not be waived, pledged or given as security or collateral, except as security for the purchase thereof and except for agricultural crop loans on produce of farms until harvested:
>
> ... the debtor's interest, not to exceed $1,000, in one motor vehicle....

Me.Rev.Stat.Ann. tit. 14, § 4401 (1980) (repealed by P.L.1981, c. 431, § 1). The debtor argues that pursuant to this statute, it was impossible for the debtor on October 20, 1980 to have granted to the plaintiff a nonpurchase-money security interest in the first $1,000 of value of the car. Because no security interest was ever created in the first $1,000 of the car's value, and because at the time of filing the car was worth less than $1,000, it follows, the debtor argues, that at the time of filing, the car was already entirely free of plaintiff's security interest, leaving the debtors free to choose the federal exemptions provided in 11 U.S.C. § 522(d).

■ The debtor misconstrues the import of section 4401. That section provides only that the *right* of exemption may not be waived, pledged or given as security or collateral. It does not follow that a nonpurchase-money security interest in an automobile valued at $1,000 or less can never be created. While such a security interest may well be *voidable*, it is not *void ab initio*. Whether or not a particular piece of property qualifies as exempt under section 4401 can not be determined at the time a security interest in it is created; rather that determination must await a later date such as the date of filing in bankruptcy, *see, e.g., In re Thompson*, 4 B.R. 18, 20 (Bkrtcy.D.Me. 1979), or the date a creditor attempts to attach the property. Circumstances may change: an object which qualifies as a tool of the trade may become nonexempt, or vice versa, should the debtor take a new job. A choice may be involved: the debtor may own two cars while the statute permits him to exempt only one. Adoption of the debtor's argument would result in security interests popping into and out of existence with the shifting status of the collateral. Further, it would either (1) force debtors to elect, at the time of a security interest's creation, whether or not to declare the collateral exempt, perhaps thereby barring the debtor from making a more advantageous selection at a later date, or (2) make it impossible to ever create a nonpurchase-money security interest in property that, at the time of the interest's creation, could possibly be declared exempt.

The court's construction of section 4401 permits the *creation* of a nonpurchase-money security interest in property that could qualify as exempt. While section 4401 forbids a debtor from waiving his right to elect an exemption in the property, it does not purport to *force* a debtor to exercise his right of exemption at any time. An examination of practice under the old Bankruptcy Act will make the distinction clear.

---

1. 11 U.S.C. § 522(d)(2) permits a debtor to exempt

[t]he debtor's interest, not to exceed $1,200 in value, in one motor vehicle.

■ "Under the Act, if state law so allowed,[2] an exemption could be waived in favor of particular creditors by contractual provisions. There were two other ways in which exemptions could be waived: (1) by failure to file under applicable state law; and (2) by omission of a claim for exemption by the debtor in his schedule." 3 *Collier on Bankruptcy* ¶ 522.07 (15th ed. 1982) (footnotes added and omitted). Under 11 U.S.C. § 522(e) of the new Bankruptcy Code, waivers by contract are unenforceable, but the other two types of waivers continue to be valid. *Id.* The court interprets Me.Rev.Stat.Ann. tit. 14, § 4401 (1980) (repealed) as drawing a similar distinction. Under that statute, a debtor may not waive, pledge or give as security or collateral his right of exemption. In ascertaining the Legislative intent, the court notes "that general and specific words, when present together, are associated with and take color from each other." *United States v. Insco,* 496 F.2d 204, 206 (5th Cir. 1974). Thus, where a general term is followed by specific words describing a subject, the general term should be construed to embrace objects similar to those specifically described. *See Brunswick School Board v. Califano,* 449 F.Supp. 866, 870 (D.Me.1978) *affd. sub. nom Islesboro School Committee v. Califano,* 593 F.2d 424 (1st Cir.) *cert. denied sub. nom Harris v. Islesboro School Committee,* 444 U.S. 972, 100

S.Ct. 467, 62 L.Ed.2d 387 (1979). Here, it appears by the use of the terms "pledged or given as security or collateral" that the Legislature intended to prohibit "waiver" via contractual provisions. The court does not interpret section 4401 so broadly as to prohibit a debtor from even freely choosing not to assert his right of exemption provided by state law.

Under the Bankruptcy Code, a debtor may, if state law permits, elect to take either the federal exemptions listed in 11 U.S.C. § 522(d), or the applicable state exemptions, *but not both.*[3] 11 U.S.C. § 522(b); *see* 3 *Collier on Bankruptcy* ¶ 522.02 (15th ed. 1982). The debtor in this case freely elected to take the federal exemptions.[4] Under the Code, to receive the benefit of the federal exemptions, the debtor must choose not to claim the state exemptions. As discussed above, the debtor's free choice not to assert his state exemptions is not proscribed by Me.Rev.Stat.Ann. tit. 14, § 4401 (1980) (repealed). Therefore, the court finds that the plaintiff has a valid nonpurchase-money security interest in the debtor's 1975 Chrysler Cordoba.[5]

2. In 1967, Me.Rev.Stat.Ann. tit. 14, § 4401 was amended to add the language "and such right of exemption may not be waived, pledged or given as security or collateral except as security for the purchase thereof." P.L.1967, c. 412, § 2. Before that time, a debtor could waive his rights to exemption. *Jensen v. Cannell,* 106 Me. 445, 449, 76 A. 914, 916 (1910); *Fogg v. Littlefield,* 68 Me. 52, 55 (1877).

3. At the time of filing in this case, Maine law permitted the debtor to choose either set of exemptions. Today Maine debtors are restricted to taking the state exemptions. Me.Rev. Stat.Ann. tit. 14, § 4426 (Supp. 1981–82); *see* 11 U.S.C. § 522(b)(1).

4. Whether the debtor could, at this time, amend his schedules to elect the state exemptions is a question this court need not now decide. *Compare, In re Stewart,* 11 B.R. 447 (Bkrtcy.N.D.Ga.1981) *with In re Cobb,* 3 B.R.

150, 6 B.C.D. 9, 1 C.B.C.2d 540 (Bkrtcy.N.D. Cal.1980).

5. To hold otherwise would permit a debtor in bankruptcy to have the benefit of both state and federal exemptions, since state exemptions could not be "waived" even by the act of electing the federal exemptions. That result was clearly not within the contemplation of the Maine Legislature and the statute should not be so construed. *See Ballard v. Edgar,* 268 A.2d 884 (Me.1979); *see also State v. Rand,* 430 A.2d 808, 817 (Me.1981) (Thing may be within letter of statute yet not be within statute because it is not within its spirit nor within intention of its makers—Legislature is presumed not to intend illogical or absurd result). Moreover, such an interpretation would appear to put Maine law in conflict with the Bankruptcy Code, raising serious questions of federal preemption and supremacy which do not arise under this court's construction of section 4401.